**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Oct 22 2014, 10:21 am
**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BERNARD E. HARRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1404-CR-152 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10C04-1210-FA-96

**October 22, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Bernard E. Harris appeals his sentence for two counts of child molesting as class A felonies. Harris raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offense and the character of the offender. We affirm.

FACTS AND PROCEDURAL HISTORY

On July 4, 2009, Harris, who was born on April 28, 1968, married the mother of B.C. Harris saw B.C. every other week and sometimes for longer periods. Between January 1, 2012, and July 1, 2012, Harris forced B.C., who was then twelve years old, to engage in vaginal sexual intercourse and oral sex. Between July 2, 2012, and September 30, 2012, Harris forced B.C. to engage in vaginal sexual intercourse and anal sexual intercourse.

In October 2012, the State charged Harris with three counts of child molesting as class A felonies and one count of child solicitation as a class D felony. That same month, the court scheduled a jury trial for March 12, 2013. On February 2, 2013, Harris requested a continuance, and the court rescheduled the jury trial for June 18, 2013. On May 14, 2013, Harris again requested a continuance, and the court rescheduled the jury trial for October 22, 2013. Harris filed another motion for continuance, and the court granted the motion and rescheduled the jury trial for February 4, 2014.

On January 22, 2014, Harris filed a Motion for More Specific Statement or, in the Alternative, Motion to Dismiss alleging that the information alleged "a date in 2012" and that this vague statement prevented him from formulating a defense. Appellant's Appendix at 46. On February 3, 2014, Harris withdrew his formerly entered plea of not

guilty and entered a plea of guilty to two counts of child molesting as class A felonies. The same day, the State filed an amended information which included two counts of child molesting as class A felonies, and the court held a hearing at which Harris pled guilty and the court took the pleas under advisement.

On March 3, 2014, the court held a hearing. B.C.'s father read a statement in which he indicated that Harris had used a digital camera to photograph B.C. and record video of B.C. in the nude and while performing sex acts, that the detectives searched Harris's residence but could not find the memory card, and that B.C.'s mother continued to search the trailer for weeks afterwards in hopes of locating the card and any other evidence overlooked by the police but she did not find the memory card. B.C.'s father stated: "There is still a concern in my mind that these new digital images and videos that [Harris] recorded of my underage daughter are still out there somewhere, perhaps in someone's possession right now or in a hiding place where they may someday be discovered by another unscrupulous individual." Transcript at 30-31. He also indicated that Harris used several grooming techniques against B.C. including attempting to alienate B.C. from him and his wife, showering B.C. with gifts, becoming verbally abusive, and taking control emotionally and physically. He testified that Harris used Bible references and asked B.C. to refer to B.C.'s father by his first name and to refer to him as "Daddy." Id. at 32. According to B.C.'s father, Harris made physical threats to B.C.'s rabbit. He also testified that B.C. has been in weekly counseling since two weeks after the revelation.

3

B.C. testified that she was twelve years old when the molestation began, and that she "had to go on walks into the woods to be forced by [Harris] to go through so much pain." Id. at 42. She testified: "You kept threatening me that if I told, or didn't do what you wanted me to do, that you would take my phone away, not let me text my friends, make my mom's life horrible, and even kill my rabbit; which are all things were [sic] important to me especially at such a young age." Id. B.C. testified that Harris "did those things to [her] so many times, for so long." Id. She stated that, when she visited her mother, Harris would take her out on the railroad tracks behind the house where they would go to a certain area in the woods and he would have her perform intercourse and oral sex. She also testified that Harris used a razor to shave her pubic area, used a dildo, and used a camera to take pictures and videos of her. B.C.'s mother testified that Harris has not shown any remorse for what he did to B.C. Denise Poukish, the probation officer who prepared the presentence investigation report, testified that she recommended that Harris receive an aggravated sentence and that the sentences run consecutive to each other.

Harris's counsel stated: "[Harris] is not able address [sic] the child because obviously that's inappropriate at this point." Id. at 62. Harris's counsel asked that the court impose the advisory sentence and give consideration to probation. The prosecutor asked for "a minimal [sic] of thirty years on each one to be run consecutively" and if the court believed they should be concurrent then "50 years would be an appropriate one for one count or two counts run concurrently." Id. at 63. At the end of her argument, the

4

prosecutor stated: "we ask for 50 years on each count to be served consecutively." Id. at 65.

The court found that the harm, injury, and loss suffered by the victim was greater than the elements necessary to prove the commission of the offense, and that Harris was in a position of trust with B.C. and had demonstrated a lack of remorse. The court stated: "While the mitigators are that there is no criminal history and there was acceptance of responsibility by pleading guilty [Harris] has shown no remorse to this Court and the Court finds that these aggravating factors clearly outweigh the mitigating factors . . . ." Id. at 66. The court sentenced Harris to fifty years on each count and ordered that the sentences be served consecutive to each other for an aggregate sentence of 100 years.

## DISCUSSION

The issue is whether Harris's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Harris acknowledges that he was in a position of trust with B.C. and that B.C. reported he would threaten her, but argues that "[w]hile such threats were disgusting Harris never physically forced B.C. to submit and/or perform the sexual acts he acknowledged committing." Appellant's Brief at 8. He contends that the conduct does

5

not represent the worst example of said crimes which would merit maximum consecutive sentences. He also argues that the nature and circumstances may be sufficiently aggravating to warrant an enhanced sentence but does not justify the order of maximum terms served consecutively. He also argues that the guilty plea saved the court the time and expense of a jury trial and saved B.C. from testifying about the molestation. He notes that the State chose to file only two counts in the amended information after his counsel requested the State file a more time specific information given that the original charging information alleged the offenses occurred on or about a date in 2012. Accordingly, Harris argues that he pled guilty to both counts contained in the amended information and that he did not receive a direct benefit from his decision to enter open pleas as no charges were dismissed in return for his guilty pleas. He points to his employment history, cooperation during the presentence interview, and lack of criminal history.

The State responds that Harris's sentence is not inappropriate and that "[i]n exchange for [Harris's plea], the State filed [an] amended information which removed a single count of child molesting and the count of child solicitation." Appellee's Brief at 6. The State argues that the crimes were particularly egregious as the evidence shows that Harris sexually violated B.C. over a long period of time, starting with sexual touching when she was barely twelve years old, and the offenses occurred bi-weekly from January 1, 2012, to September 30, 2012. The State points to the impact on B.C. and her family, Harris's position of trust, his refusal to reveal the location of the videos and photographs he took of B.C., his threats, and his attempt to alienate B.C. from her father.

6

Regarding the imposition of the maximum possible sentence, the Indiana Supreme Court has stated:

> [T]he maximum possible sentences are generally most appropriate for the worst offenders. This is not, however, an invitation to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

Buchanan v. State, 767 N.E.2d 967, 973 (Ind. 2002) (citations and quotation marks omitted).

Our review of the nature of the offense reveals that Harris was in a position of trust and forced B.C., who was twelve years old, to have vaginal sexual intercourse, oral sex, and anal sexual intercourse with him. Harris took B.C. into the woods to have her perform intercourse and oral sex, and the conduct occurred bi-weekly for a period of nine months. Harris used a razor to shave B.C.'s pubic area, used a dildo, and took pictures and videos of her. He threatened that he would make the life of B.C.'s mother horrible and would kill her rabbit if she did not do what he wanted or if she told anyone. While the two counts of child molesting involved the same child, they did not involve identical acts.[1] B.C. has been in weekly counseling since two weeks after the revelation.

Our review of the character of the offender reveals that Harris pled guilty but only after multiple requests for continuances and on the day before the scheduled jury trial.

---

[1] Count I alleged that Harris "did with B.C. . . . perform or submit to deviate sexual conduct and sexual intercourse, to-wit: forced vaginal sexual intercourse and oral deviate sexual conduct." Appellant's Appendix at 50. Count II alleged that Harris "did with B.C. . . . perform or submit to deviate sexual conduct and sexual intercourse, to-wit: forced vaginal sexual intercourse and anal deviate sexual conduct." Id.

The record reveals that the State initially charged Harris with three counts of child molesting as class A felonies and one count of child solicitation as a class D felony, and the State later amended the information to two counts of child molesting to which Harris pled guilty. He does not have a criminal history.

Harris has one child who is fourteen years old. The presentence investigation report ("PSI") indicates that Harris reported that he pays child support but does not see his son regularly and has seen him only five to six times in his life. The PSI also states that Harris reported that he was employed as a janitor at the time of his arrest. According to the results of the Indiana Risk Assessment System ("IRAS"), the PSI reports that Harris's overall risk assessment score placed him in the low risk to reoffend category. However, Poukish, the probation officer who prepared the PSI, testified that the IRAS does not measure sexual recidivism. She also testified that Harris is in the low category for criminal recidivism to commit another criminal offense but that does not include another sex offense.

After due consideration of the trial court's decision and in light of the repeated offenses and the position of trust held by Harris, we conclude that the sentence imposed by the trial court is not inappropriate in light of the nature of the offense and the character of the offender.

## CONCLUSION

For the foregoing reasons, we affirm the sentence imposed by the trial court. Affirmed.

BARNES, J., and BRADFORD, J., concur.

8